J-A28038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BIN WANG, | : | |
| | : | |
| Appellant | : | No. 3485 EDA 2016 |

Appeal from the PCRA Order November 4, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0008035-2007

BEFORE: GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                     **FILED JANUARY 05, 2018**

Appellant, Bin Wang, appeals from the Order entered in the Philadelphia County Court of Common Pleas dismissing his first Petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm on the basis of the PCRA court's March 20, 2017 Opinion.

The underlying facts, as gleaned from the certified record and the PCRA court's Pa.R.A.P. 1925(a) Opinion, are as follows. On November 6, 2008, a jury convicted Appellant of First-Degree Murder and Possession of an Instrument of Crime[1] in connection with the May 11, 2007 shooting of Appellant's wife, Xiangzhen Lin, also known as Sharon Lin ("Sharon"), inside the couple's Philadelphia home during a dispute. Appellant provided a

_____

[1] 18 Pa.C.S. § 2502(a) and 18 Pa.C.S. § 907, respectively.

statement to police claiming that Sharon committed suicide by shooting herself in the head, and Appellant testified in his own defense at trial. Following the jury's verdict, the trial court immediately sentenced Appellant to life imprisonment.

Appellant filed a timely direct appeal challenging, *inter alia*, the sufficiency and weight of the evidence, and this Court affirmed Appellant's Judgment of Sentence. ***Commonwealth v. Bin Wang***, No. 903 EDA 2009 (Pa. Super. filed Feb. 10, 2011) (unpublished memorandum). On August 9, 2011, our Supreme Court denied allowance of appeal. ***Commonwealth v. Bin Wang***, No. 162 EAL 2011 (Pa. filed Aug. 9, 2011).

On September 7, 2011, Appellant filed a *pro se* PCRA Petition, and the PCRA court appointed counsel. Appellant eventually retained private counsel, who filed an Amended PCRA Petition on May 22, 2016. Appellant attached an extensive affidavit from a new purported expert that supported Appellant's suicide theory. On August 25, 2016, the Commonwealth filed a Motion to Dismiss.

On September 20, 2016, the PCRA court filed a notice of its intent to dismiss Appellant's PCRA Petition without a hearing pursuant to Pa.R.Crim.P.

907. On November 4, 2016, the PCRA court dismissed Appellant's PCRA Petition.[2]

Appellant filed a timely Notice of Appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents seven issues for our review:

[1.] Trial counsel was ineffective for not expanding the scope of his forensic investigation by consulting with and retaining a forensic expert like Brent Turvey to conduct a holistic examination of all the physical evidence. Trial counsel's ineffectiveness prejudiced [Appellant] because there is a reasonable probability the outcome of his trial would have been different because the physical evidence, as Mr. Turvey's 35-page affidavit makes clear, supported [Appellant's] suicide narrative far more than the Commonwealth's homicide narrative. The PCRA court, therefore, erred when it rejected [Appellant's] trial counsel ineffectiveness claim.

[2.] Trial counsel failed to present the testimony of [Appellant's] three neighbors-Troy Davis, Timothy Flemings, and Rick Kern– each of whom would have corroborated salient aspects of [Appellant's] statement and trial testimony, thereby bolstering his defense that Sharon Lin committed suicide and creating reasonable doubt regarding the Commonwealth's homicide narrative. Trial counsel's ineffectiveness prejudiced [Appellant] because there is a reasonable probability that had trial counsel presented Davis, Flemings, and Kern the outcome of his trial would have been different. The PCRA court, therefore, erred when it rejected [Appellant's] trial counsel ineffectiveness claim.

[3.] Trial counsel failed to object to inadmissible and prejudicial hearsay and "other crimes/bad acts" testimony that [Appellant] had previously assaulted and mistreated Sharon Lin. Assuming the probative value of this evidence outweighed its prejudicial impact, trial counsel failed to request a cautionary instruction

_____

[2] The PCRA court amended its Order on November 15, 2016, after Appellant had filed a Notice of Appeal.

directing the jury to consider this evidence solely for the limited purpose for which it was admitted. Trial counsel's ineffectiveness prejudiced [Appellant] because had trial counsel timely objected, the trial court would have excluded this evidence and testimony, and had it done so, there is a reasonable probability the outcome of [Appellant's] trial would have been different. Likewise, if timely objected to and timely requested, the trial court would have issued a cautionary instruction prohibiting the jury from considering this evidence for propensity purposes. The PCRA court, therefore, erred when it rejected [Appellant's] trial counsel ineffectiveness claim.

[4.] Trial counsel failed to request a "missing evidence" instruction based on the Commonwealth's admitted negligence in failing to preserve evidence from Sharon Lin's hands that would have enabled forensic examiners to perform gunshot residue testing on Ms. Lin's hands. The Commonwealth's negligence deprived [Appellant] of his due process right to potentially exculpatory evidence. Trial counsel did not have a reasonable basis for not requesting a "missing evidence" instruction, especially after trial counsel mentioned this very fact during trial and closing arguments. Trial counsel's ineffectiveness prejudiced [Appellant] because had the trial court issued a "missing evidence" instruction, it is reasonably probable the outcome of [Appellant's] trial would have been different. The PCRA court, therefore, erred when it rejected [Appellant's] trial counsel ineffectiveness claim.

[5.] During the charge conference, when the trial court gave no mention of issuing an instruction regarding [Appellant's] theory of defense, *i.e.*, Sharon Lin committed suicide, trial counsel failed to object and failed to request an instruction informing the jury of [Appellant's] suicide defense. Trial counsel's ineffectiveness prejudiced [Appellant] because had the jury been properly and specifically instructed, there is a reasonable probability [Appellant's] trial would have turned out differently. The PCRA court, therefore, erred when it rejected [Appellant's] trial counsel ineffectiveness claim.

[6.] The cumulative impact of trial counsel's objectively unreasonable decisions before and during trial undermines confidence in the jury's conviction entitling [Appellant] to a new trial. The PCRA court, therefore, erred when it rejected [Appellant's] cumulative prejudice claim.

- 4 -

[7.] The PCRA court erred by not granting an evidentiary hearing where trial counsel, Troy Davis, Timothy Flemings, Rick Kerns, and Brent Turvey could testify and present evidence in support of [Appellant's] suicide narrative and trial counsel ineffectiveness. The PCRA court, therefore, erred when it rejected [Appellant's] evidentiary hearing request.

Appellant's Brief at 4-6 (citations omitted).

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

There is no right to a PCRA hearing; a hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). "With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. ***Id***. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003).

Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. ***Commonwealth v. Jones***, 811 A.2d 994, 1002 (Pa. 2002). "If a petitioner cannot prove that trial counsel was ineffective, then petitioner's derivative claim of appellate counsel ineffectiveness must also fail[.]" ***Commonwealth v. Hutchinson***, 25 A.3d 277, 286 (Pa. 2011).

To obtain relief on a claim that counsel was ineffective for failing to call a potential witness, the PCRA petitioner must establish that:

(1)   the witness existed;

(2)   the witness was available to testify for the defense;

(3)   counsel knew of, or should have known of, the existence of the witness;

(4)   the witness was willing to testify for the defense; and

(5)    the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Washington,*** 927 A.2d 586, 599 (Pa. 2007).

"We have often held that no number of failed claims may collectively warrant relief if they fail to do so individually." ***Commonwealth v. Spotz***, 18 A.3d 244, 321 (Pa. 2011) (citation and quotation marks omitted). "However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit." ***Id.*** "When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed." ***Id.***

The Honorable Sheila Woods-Skipper, sitting as the PCRA court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claims.  The record supports the PCRA court's findings and the Order is otherwise free of legal error.  We, thus, affirm on the basis of the PCRA court's March 20, 2017 Opinion.[3]  ***See*** PCRA Court Opinion, 3/20/17, at 9-18 (concluding it properly dismissed Appellant's PCRA Petition because: (1) trial counsel's

---

[3] We note that on November 2, 2017, Appellant filed an "Application for Post-Submission Communication" pursuant to Pa.R.A.P. 2501(a), which the Commonwealth opposed in a November 6, 2017 Motion to Strike and Answer.  We hereby deny Appellant's Application because Appellant has failed to demonstrate any basis under Rule 2501 that would permit such a post-submission communication, *e.g.*, a "change in status of authorities" or "when expressly allowed at the bar at the time of the argument." Pa.R.A.P. 2501.

decision to call an expert pathologist to support his suicide theory at trial had a reasonable basis designed to effectuate his interests; Appellant's hindsight reassessment of trial counsel's strategy is unpersuasive and contrary to case law; (2) trial counsel was not ineffective for failing to call three neighbor witnesses because their testimony would have been cumulative of other evidence; (3) trial counsel was not ineffective for failing to object to evidence that Appellant assaulted and mistreated the victim, which was admissible as other acts evidence under several exceptions to Pa.R.E. 404(b), including *res gestae*, "motive, malice, intent, and ill will[,]" PCRA Court Opinion at 13; (4) trial counsel was not ineffective for failing to request a "missing evidence" instruction for police failure to "bag" Sharon's hands in order to perform gunshot residue testing because the evidence was only "potentially useful" and Appellant failed to demonstrate bad faith; (5) trial counsel was not ineffective for failing to request a jury instruction regarding his suicide defense because the evidence was not consistent with suicide, and a "suicide" instruction would have confused the jury;[4] (6) Appellant's cumulative prejudice claim failed as a matter of law because each of his ineffectiveness claims lacked arguable merit; and (7) the PCRA

---

[4] Moreover, the court instructed the jury on the elements of First-Degree Murder. This instruction sufficiently clarified that (1) the Commonwealth was required to demonstrate that Appellant killed Sharon; and (2) if the jury concluded that Sharon had shot herself, Appellant was to be found not guilty. ***See*** N.T. Trial, 11/5/08, at 250.

court did not abuse its discretion in refusing to hold an evidentiary hearing because Appellant's PCRA Petition presented no genuine issues of material fact.).

The parties are instructed to attach a copy of the PCRA court's March 20, 2017 Opinion to all future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/18

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

FILED

MAR 2 0 2018

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF PENNSYLVANIA    :
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
vs.    :    CP-51-CR-0008035-2007
　　　　　　　　　　　　　　　　　　　:
BIN WANG    :
PP# 789837    :
　　　　　　　　　　　　　　　　　　　:



CP-51-CR-0008035-2007 Comm. v. Wang, Bin
Opinion

DOCKET NO.:    3485 EDA 2016

**OPINION**

7921075561

Appellant, Bin Wang, appeals from the dismissal of his petition for relief pursuant to the Post Conviction Relief Act, 42 P.a.C.S. §§ 9541 et seq. (PCRA). On November 4, 2016, following review of the submissions of both appointed and retained PCRA counsel, the Commonwealth's Motion to dismiss and appellant's numerous pro se submissions, appellant's PCRA petition was dismissed without a hearing. The facts and procedural history are as follows.

On November 6, 2008, following a jury trial, appellant was found guilty of first degree murder and possession of an instrument of crime, and sentenced to an aggregate sentence of life imprisonment.[1] The evidence elicited at trial was that on May 11, 2007, at approximately 7:30 PM, police responded to a radio call of shots fired at appellant's home at 6034 Duffield Street in the City and County of Philadelphia. Police Officer Anthony Magsam, the first officer to arrive at the scene, was met outside the property by a white male who

---

[1] 18 Pa.C.S. § 2502 and 18 Pa.C.S. § 907, respectively. Appellant received a mandatory life sentence for murder and a concurrent 1- 2 years for possession of an instrument of crime.

1

indicated that someone had shot themselves upstairs. Officer Magsam entered 6034 Duffield Street and went up the stairs where he was met by appellant and another male. In the front bedroom, he observed appellant's wife, Xiangzhen Lin (also known as Sharon Lin), lying on the floor next to the bed, with her face facing about a forty five degree angle, facing up, and blood around her head. Her head and back were against the wall, tilted at the corner on the floor. She was on her right side with her head against the head board and her legs/feet were up on the bed. He checked for a pulse then called for medical assistance. Fire rescue arrived approximately ten minutes later and moved Sharon Lin's body from the floor up onto the bed. Officer Magsam also observed a comforter with blood on it piled at the lower end of the bed and a lap top computer, also on the bed which he placed on a nearby table. When he removed the comforter, he discovered a second lap top computer on the bed, but did not move it. Officer Magsam surveyed the room but saw no firearm or ballistic evidence. He asked appellant where was the gun and appellant pointed to a small night stand with drawers located in a corner beside the bed. The top drawer of the night stand was broken and a lampshade was on the floor. He did not look inside the night stand. Officer Magsam asked appellant what happened and appellant told him that he was depressed and thinking about shooting himself. He was holding the gun and Sharon Lin stopped him, took the gun, went upstairs and shot herself. Officer Magsam secured the scene and sent appellant and the male downstairs. Officer Joanne Kitz, who also responded to the radio call arriving shortly after Officer Magsam, encountered appellant

downstairs. Appellant was acting nervous and asked the officer several times if his wife was alright. Appellant told Officer Kitz that he wanted to kill himself, that it was an accident. At that point, Officer Kitz took appellant into custody. Appellant was transported to homicide for questioning.

An autopsy was performed on Sharon Lin by Assistant Medical Examiner, Dr. Gregory McDonald. Dr. McDonald determined that Sharon Lin's death was caused by a single gunshot wound to the head. The bullet entered the left backside of the head and exited the left temple area producing multiple fractures and significant brain injury and blood loss resulting in death. He found no evidence of close range firing in the form of soot or stippling. It was his opinion, to a degree of scientific certainty, that the wound could not have been self-inflicted.

Police Officers Terrance Lewis and John Taggart of the Crime Scene Investigation Unit processed the crime scene. They surveyed the house, marked potential evidence, photographed the second floor front bedroom and prepared a sketch. Officer Lewis photographed what he believed from his experience to be a bullet strike mark over the closet in the northeast corner of appellant's bedroom. The strike mark contained hair-like fibers. Officer Lewis recovered and placed on a property receipt, a fired cartridge (FCC) case from the head of the bed near the pillow; a projectile from under the mattress which had human hair-like fibers attached to it; and a .9 millimeter handgun from inside the bottom drawer of the small nightstand next to the bed underneath some CD's. The evidence was turned over to the Firearms Identification Unit for analysis.

3

Analysis of this evidence determined to a reasonable degree of scientific certainty, that the FCC and the projectile were fired in the gun recovered from the nightstand.

Appellant was interviewed by Homicide Detective Timothy Bass. Detective Bass administered both oral and written Miranda warnings to appellant, and at approximately 4:00 PM on May 12, 2007, appellant gave a seven page statement about the events surrounding his wife's death and provided a diagram of the bedroom. Appellant told Detective Bass that he and Sharon Lin had an argument and she left the house and was gone all night. He went to work but returned home at approximately 10:00 AM to find her sleeping. They began to argue about several things, including family matters in China, their debt and a girl he met on the internet. Appellant said that he told Sharon Lin that he was going to shoot himself because he could no longer take the pressure. He pulled out his gun and had it in his hand and Sharon Lin took it away. They began to talk and she left the house and went to work at appellant's shop. At about 4:00 PM, Sharon Lin called and asked him to come to his shop because a customer needed an estimate for some work. Appellant refused, claiming he was tired. Approximately thirty minutes later, Sharon Lin arrived at home, claiming that she too was tired. They went to sleep and awoke around 6:30 PM and the argument began again. Appellant, tired of the argument, retrieved his gun from the heater cover where he said Sharon Lin had placed it, and left the house. When he returned, appellant placed the gun on the heater cover, the usual place he kept. He then noticed that the television

4

had been moved. Sharon Lin was in another bedroom at the time. Appellant asked her why she moved the television and they began to fight again. Appellant said that he then walked around the house trying to calm down. He then went back to the bedroom to find Sharon Lin in the bed with both her hands under the blanket. She was sitting up on the bed with her back against the head board. The blanket was covering her up to her neck. They argued for several minutes, then she pulled the gun out, put it to her head and said she was going to kill herself. Appellant turned away, thinking that she was bluffing and she pulled the trigger. Appellant also told Detective Bass that he and Elaine, the girl he met on the internet, were soul mates and that he and Sharon Lin had discussed divorce because of their arguments about his son and their finances and Elaine. The night before the shooting, Elaine tried to call him and Sharon Lin saw the number. Sharon Lin left the house and upon her return, began to question him about Elaine. Appellant and Sharon Lin began to fight. Appellant checked her phone on the computer and saw that she had called Elaine and spoken with her for about thirty-nine minutes. Appellant read the statement, even making corrections, and signed each page indicating that it was accurate.

At trial, Police Officer Esteban Roche, a computer forensic examiner who analyzed the hard drive of the two computers recovered from appellant's house testified that there had been a series of emails and internet telephone calls between appellant and a female Jiang Wengin (also known as Elaine). There was also communication between Sharon Lin and Elaine, who was in China,

about an internet relationship between Elaine and appellant. The Commonwealth also introduced evidence that appellant's wife had been observed outside at night crying with bruises and a swollen face and that the police had been called to appellant's home on at least two occasions.

In addition to his own testimony, appellant introduced the testimony of his partner in their vehicle inspection business, Ernesto Velazquez (Velazquez) and the expert testimony of forensic pathologist Dr. Paul Hoyer who testified that, based on his review of the autopsy report, the photographs, the discovery and digital images of the gun, it was his expert opinion that it was possible that Sharon Lin could have held the gun and shot herself; the weapon would be upside down, held in either hand and fired with the thumb of the other hand. Velazquez testified that he was managing appellant's affairs and that appellant's home was in foreclosure. He also testified that appellant had a good reputation and was known as someone who helped others.

Appellant testified substantially in conformity with his statement to Detective Bass. He stated that both he and his wife were unhappy; he was in debt with two mortgages, two equity loans and a car loan. He was upset and could no longer stand the pressure and was going to kill himself. Sharon Lin took the gun from him. She went to work and later called him to say someone needed an estimate for work. He did not go and she returned home about 15-30 minutes later. They made love and slept. At about 6:30 PM, when he awoke, Sharon Lin was sitting next to him in bed on the computer. They began to argue about the emails between Elaine and Sharon Lin. Sharon Lin claimed

6

that appellant was talking bad about her to Elaine and that Elaine was trying to take appellant away from her. Appellant read into the record, portions of emails sent from Sharon Lin to Elaine and forwarded to him with comments in Chinese which purported to corroborate his testimony that Elaine was not talking bad about Sharon Lin. Appellant left the house and returned to find the television knocked off the dresser. It made him angry and they began to fight. He left the room and returned. Sharon Lin was on the bed, with her back toward the headboard, underneath the blanket. She then said, "Don't push me. I'll kill myself." Appellant was at the foot of the bed. He turned away, then heard the gun discharge. When she fell, she turned almost 180 degrees and knocked over the night stand. He did not know the gun was in the night stand. Appellant claimed that he did not move her body or touch the gun. Following the presentation of all of the evidence, the jury found appellant guilty of first degree murder and PIC, and appellant was sentenced to life imprisonment. Post sentence motions were denied without a hearing. On February 10, 2011, the Superior court affirmed the judgment of sentence. Appellant's petition for allowance of appeal to the Pennsylvania Supreme Court was denied on August 9, 2011.

On September 9, 2011, appellant timely filed a pro se PCRA petition and counsel was appointed. PCRA filed a lengthy amended petition and a supplemental petition to which the Commonwealth responded with a Motion to Dismiss on January 22, 2013. The Court reviewed the submissions and determined that no relief was due. On February 12, 2013, a Pa.R.Crim.P. 907

7

notice of intent to dismiss the petition without further proceedings was filed and served on appellant. Appellant filed a lengthy response to the notice. In his response to the 907 notice, appellant alleged, among other things, that his PCRA counsel was ineffective. New PCRA counsel was appointed, however, shortly thereafter, appellant retained private counsel to represent him on PCRA. On May 22, 2016, private counsel filed a new petition incorporating the allegations of error from the amended and supplemental amended petitions filed by prior counsel, and raising several new claims of trial counsel ineffectiveness. The new petition included an extensive affidavit from Brent Turvey, PhD, forensic scientist, refuting the findings of Dr. McDonald and Robert Stott, and advancing his opinion that Sharon Lin's death was a suicide. On August 25, 2016, the Commonwealth filed a Motion to Dismiss, addressing appellant's new claims. The Court reviewed all of the filings, determined that appellant was not entitled to PCRA relief and again filed and served appellant with a Rule 907 notice. Both appellant and private counsel filed lengthy responses to the 907 notice which the Court thoroughly reviewed. On October 21, 2016, following the presentation of argument by both counsel, appellant's petition for relief was dismissed without a hearing. This appeal followed.

In reviewing the denial of PCRA relief, [the reviewing court] examines whether the PCRA court's determination is supported by the record and free of legal error. Commonwealth v. Tharp, 627 Pa. 673, 690, 101 A.3d 736, 746 (2014). All of appellant's complaints on appeal allege the ineffectiveness of trial counsel. Trial counsel is presumed to be effective. Commonwealth v. Martin, 5

8

A.3d 177, 183 (Pa. 2010). To overcome this presumption, appellant's burden is to plead and prove each element of the test for ineffectiveness by a preponderance of the evidence. Id. To be entitled to relief on an ineffectiveness claim, [appellant] must prove that the underlying claim is of arguable merit, that counsel's performance lacked a reasonable basis, and that counsel's ineffectiveness caused him prejudice. Commonwealth v. Solano, 129 A.3d 1156, 1178 (Pa. 2015) citing Commonwealth v. Pierce, 567 Pa. 186, 786 A.2d 203, 213 (2001); see also Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987). Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Id. Where it is clear that a petitioner has failed to satisfy any one prong of the test, the Court may dispose of the claim on that basis alone. Commonwealth v. Steele, 961 A.2d 786, 795 (Pa. 2008).

Appellant first complains that trial counsel was ineffective for not expanding the scope of his forensic investigation by consulting with and retaining a crime scene expert or reconstructionist to conduct a holistic examination of all the physical evidence at the scene. A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued. Commonwealth v. Davido, 630 Pa. 217, 248, 106 A.3d 611, 629 (2014). In appellant's case, trial counsel's strategy was to show that the decedent's gunshot wound was self-inflicted. Trial counsel engaged an expert, pathologist Dr. Paul Hoyer, who testified that, based upon

his review of the autopsy report, the photographs, the discovery and digital images of the gun, it was his expert opinion that it was possible that Sharon Lin committed suicide; the weapon would be upside down, held in either hand and fired with the thumb of the other hand. Dr. Hoyer further testified that, for a suicidal gunshot wound of the head, this was the most common way of holding the weapon. It was his opinion that the evidence showed only that the wound was not a contact wound, not that the gun muzzle was three feet away when it was fired as Dr. McDonald opined. (N.T. 11/05/08 pg. 56-57, 71) When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. Commonwealth v. Eichinger, 108 A.3d 821, 848 (2014) citing Commonwealth v. Williams, 587 Pa. 304, 899 A.2d 1060, 1063–64 (2006). The record establishes that the strategy chosen by trial counsel had a reasonable basis designed to effectuate appellant's interests, namely that Sharon Lin's death was a suicide. Moreover, appellant has failed to demonstrate that the suggested alternative strategy identified by his hindsight approach (presenting an expert who would refute Dr. McDonald's opinion that the shot was fired from 2-3 feet away, and Robert Stott's opinion that appellant fired the shot while standing to the left of the bed), offered a reasonable probability of a different outcome at trial. Accordingly, this claim fails.

10

Appellant next complains that trial counsel failed to present the testimony of appellant's three neighbors, Troy Davis, Timothy Fleming and Rick Kern, whose testimony would have corroborated appellant's version of events. This claim is meritless. To prevail on a claim that counsel was ineffective for failing to call witnesses, appellant must demonstrate: (1) the witnesses existed; (2) the witnesses were available to testify; (3) counsel knew, or should have known, the witnesses existed; (4) the witnesses were willing to testify; and (5) the absence of the witnesses' testimony was so prejudicial that it denied appellant a fair trial. Commonwealth v. Solano, 129 A.3d 1156, 1166 (Pa. 2015)(emphasis added). Attached to appellant's PCRA petition were the police statements of each of the aforementioned witnesses: Troy Davis who stated that he heard a shot, then heard his neighbor screaming, "call 911;" Timothy Fleming who stated that he heard a gunshot, then a guy scream numerous times from the upstairs window, "call an ambulance," and, "she shot herself;" and, Rick Kern who stated that he heard a loud bang, then heard his neighbor hollering, "somebody call 911."

It is uncontroverted that, at the time of the incident, appellant stated that Sharon Lin had killed herself. At trial, Officer Magsam, the first officer on the scene, testified that, when he arrived, appellant kept screaming, saying that, "she shot herself." (N.T. 11/04/08 pg. 39-42) Additionally, Officer Dennis Johnson testified that, when he arrived, appellant was yelling to someone on the phone, "she killed herself." (N.T. 11/04/08 pg. 93-95) Thus, this information was before the jury. Moreover, appellant has not shown that he

11

was prejudiced by the absence of what would have been the cumulative testimony of Troy Davis, Timothy Fleming and Rick Kern. Counsel cannot be deemed ineffective for failing to call them as witnesses. See Commonwealth v. Wright, 599 Pa. 270, 961 A.2d 119, 155 (2008)(where witness's testimony would have been cumulative and not changed trial's result, counsel not ineffective for failing to call her).

Appellant next complains that trial counsel failed to object to alleged inadmissible and prejudicial hearsay and other crimes/bad acts testimony that appellant assaulted and otherwise mistreated Sharon Lin in the past.[2] At trial, the Commonwealth introduced evidence that appellant's wife (Sharon Lin) had been observed outside at night crying with bruises and a swollen face, and that the police had been called to appellant's home on at least two occasions. (N.T. 11/04/08 pg. 16, 53-54, 76-80) Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Commonwealth v. Solano, supra. However, the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Id. The evidence may also be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. Commonwealth v. Green, 2013 PA Super 249, 76 A.3d 575, 583 (2013) citing

---

[2] Appellant does not specify the alleged inadmissible and prejudicial hearsay he claims entitles him to relief in his statement of errors complained of on appeal.

12

Commonwealth v. Powell, 598 Pa. 224, 956 A.2d 406, 419 (2008). The evidence that appellant assaulted and otherwise mistreated Sharon Lin shows the chain or sequence of events which formed the history of the case, is part of the natural development of the case, and demonstrates appellant's motive, malice, intent, and ill-will toward Sharon Lin. Commonwealth v. Jackson, 2006 PA Super 128, ¶ 7, 900 A.2d 936, 940–41 (2006). Therefore, the Court did not err in permitting the evidence to be introduced at trial. Because the evidence was properly admitted, trial counsel was not ineffective for failing to object to its admission.

Moreover, in the context of an ineffectiveness claim, counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute per se ineffectiveness; "[r]ather, in order to obtain relief under such a claim, [appellant] must still satisfy each of the three prongs of the test for ineffective assistance of counsel." Commonwealth v. Weiss, 622 Pa. 663, 716, 81 A.3d 767, 798 (2013). Assuming arguendo, that the failure of trial counsel to request a cautionary instruction on evidence of prior bad acts was error, based upon the evidence, it was harmless. Id. The test for determining whether an error is harmless is as follows: Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by

13

comparison that the error could not have contributed to the verdict. Commonwealth v. Page, 2009 PA Super 20, ¶ 25, 965 A.2d 1212, 1221–22 (2009). The analysis is closely tied to the facts of the case and requires an examination of the entire record. Commonwealth v. Melvin, 2014 PA Super 181, 103 A.3d 1, 20 (2014). In the instant case, it was established that appellant and Sharon Lin were the only two people in the room at the time of the shooting. The testimony regarding the lack of evidence of close range firing, the location of the strike mark, the pattern of the blood spatter and that the weapon used was located beneath several CD's in the bottom drawer of the nightstand demonstrate that the lack of a cautionary instruction the error did not prejudice the defendant or the prejudice was de minimis and/or the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. Therefore, this claim fails.

Appellant complains that trial counsel was ineffective for failing to request a "missing evidence" instruction based on the Commonwealth's admitted negligence in failing to preserve evidence from Sharon Lin's hands that would have enabled forensic examiners to perform gunshot residue testing on Sharon Lin's hands which deprived him of his due process right to potentially exculpatory evidence. This claim is likewise meritless. Commonwealth witness, Detective Timothy Bass testified that a SEM test that could have detected lead residue on Lin's hands was not performed because Lin's hands were not "bagged" to preserve the evidence due to an oversight by

14

the crime scene unit and the detectives at the scene. (N.T. 11/04/08 pg. 216-217) When the state fails to preserve evidentiary material of which not more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant, the failure to preserve such evidence does not violate due process unless [appellant] can show bad faith on the part of the police. Commonwealth v. Snyder, 599 Pa. 656, 676, 963 A.2d 396, 408 (2009) citing Illinois v. Fisher, 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004). A showing of bad faith is required for a due process violation where the Commonwealth destroys potentially useful evidence before the defendant has an opportunity to examine it, no matter whether the evidence is introduced at trial and no matter how useful the evidence is to the prosecution or the defense. Id. See Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)(whether a federal due process violation occurs depends on whether the evidence can be considered materially exculpatory or merely potentially useful to a defendant; "potentially useful" evidence is evidence that "could have been subjected to tests, the results of which might have exonerated the defendant."). Because the evidence at issue was only potentially useful and appellant has made no showing of bad faith, this claim fails. Accordingly, trial counsel cannot be deemed ineffective for failing to raise a meritless claim. Commonwealth v. Washington, 592 Pa. 698, 927 A.2d 586, 603 (2007).

Appellant complains that trial counsel was ineffective for failing to request that the Court instruct the jury on appellant's suicide theory of defense. This claim is also meritless. Defendants are generally entitled to

15

instructions that they have requested and that are supported by the evidence. Commonwealth v. Markman, 591 Pa. 249, 916 A.2d 586, 607 (2007). Therefore, the defendant must establish that the trial evidence would reasonably support a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial. Commonwealth v. Hairston, 624 Pa. 143, 163, 84 A.3d 657, 668 (2014). While appellant did pursue a suicide defense, the evidence was not consistent with suicide: there was no evidence of close range firing; the medical examiner testified that the gunshot wound would have left the victim immediately incapacitated; the murder weapon was found inside the bottom drawer of the night stand underneath some CD's; and the blood evidence was inconsistent with appellant's testimony of where the victim was positioned when he alleged she shot herself. (N.T. 11/03/08 pg. 56-57, 63; 11/05/08 pg. 14-16, 20-21) Instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. Commonwealth v. Charleston, 2014 PA Super 116, 94 A.3d 1012, 1026 (2014). See also Commonwealth v. Yale, 2016 PA Super 242, 150 A.3d 979, 986 (2016)(To instruct a jury on possible verdicts that are unsupported by any evidence can serve only to pervert justice). Consequently, appellant was not entitled to a suicide instruction. As such, trial counsel was not ineffective for failing to request that the instruction be given.

Appellant complains that the cumulative impact of trial counsel's alleged objectively unreasonable decisions before and during trial undermines

confidence in the jury's first degree murder conviction entitling appellant to a new trial. Generally, no number of failed claims may collectively warrant relief if they fail to do so individually. Commonwealth v. Washington, 592 Pa. 698, 927 A.2d 586, 617 (2007). However, when the failure of individual claims is grounded in lack of prejudice, the cumulative prejudice from those individual claims may properly be assessed. Commonwealth v. Koehler, 614 Pa. 159, 36 A.3d 121, 161 (2012). In the instant case, the Court has determined that all of appellant's claims of ineffectiveness lack arguable merit. Thus, there is no basis for a claim of cumulative error. See Commonwealth v. Sattazahn, 597 Pa. 648, 952 A.2d 640, 671 (2008)(where claims are rejected for lack of arguable merit, there is no basis for an accumulation claim).

Finally, Appellant complains that the PCRA court erred by failing to grant an evidentiary hearing where trial counsel, Troy Davis, Timothy Flemings, Rick Kerns and Dr. Brent Turvey could present testimony and evidence in support of appellant's trial counsel ineffectiveness claims. The decision whether to grant an evidentiary hearing is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. Commonwealth v. Reid, 627 Pa. 151, 176, 99 A.3d 470, 485 (2014). There is no absolute right to an evidentiary hearing on a post-conviction petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. Commonwealth v. Jones, 942 A.2d 903, 906 (Pa.Super.2008). A reviewing court must examine the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court

17

erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing. Commonwealth v. Springer, 961 A.2d 1262, 1264 (Pa.Super.2008). In the instant case, based upon the record, the Court determined that each of appellant's ineffective assistance of trial counsel claims did not meet all three prongs of the Pierce test thereby rendering the claims meritless. Hence, no evidentiary hearing was warranted. See Commonwealth v. Jones, supra (if the court can determine without an evidentiary hearing that any one of the prongs necessary to prove the ineffective assistance of counsel cannot be met, then no purpose would be advanced by holding an evidentiary hearing.).

For the foregoing reasons, appellant's petition for post-conviction relief was properly denied without a hearing.

BY THE COURT:

_____
SHEILA WOODS-SKIPPER, PJ

18