J-S54027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                    :                  PENNSYLVANIA
                                                    :
                      v.                             :
                                                    :
                                                    :
CHARLES WILLIAM SPENCER              :
                                                    :
                Appellant                          :         No. 261 WDA 2018

Appeal from the Judgment of Sentence February 8, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000506-2017

BEFORE:  PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 16, 2018**

Charles William Spencer appeals from the judgment of sentence entered in the Court of Common Pleas of Fayette County.  After our review, we affirm.

Following a jury trial, Spencer was convicted of various drug offenses.[1] At the time of the offenses, Spencer was an inmate at SCI-Fayette.  The court sentenced Spencer to a term of 28 to 56 months' imprisonment to be served concurrently with the sentence he was serving at the time of the instant offenses.  Order, 2/8/18.  On appeal, Spencer raises the following issues for our review:

> 1. Whether the trial court committed reversible error in denying the defendant's request to call a rebuttal witness

---

[1] 18 Pa.C.S. § 5123A (Contraband/Controlled Substance); 35 P.S. § 780-113(a)(16) (Intentional Possession of a Controlled Substance by Person Not Registered); 35 P.S. § 780-113(a)(32) (Use/Possession of Drug Paraphernalia).

when that witness was being offered to discredit and impeach the testimony of the Commonwealth's witness?

2. Whether the trial court erred in denying defendant's request for a missing witness jury instruction when that witness was on vacation at the time of trial?

Appellant's Brief, at 4.

First, Spencer argues that the court erred in denying his request to call a rebuttal witness, Corrections Officer Scott Glover, to rebut the testimony presented by Corrections Officer Melvin Wolfe. The Commonwealth objected, and the trial court sustained the Commonwealth's objection, finding the points to which Officer Glover's testimony would rebut Officer Wolfe's testimony were irrelevant to this case. We agree.

> [T]he admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. Where the evidence proposed goes to the impeachment of the testimony of his opponent's witnesses, it is admissible as a matter of right. Rebuttal is proper where facts discrediting the proponent's witnesses have been offered.

*Commonwealth v. Ballard*, 80 A.3d 380, 401–402 (Pa. 2013) (internal citations and quotations omitted).

Officer Wolfe testified that he works on the Search Team at SCI-Fayette, and that his duties include random cell searches for contraband. N.T. Jury Trial, 1/3-4/18, at 6-8. He stated that in the past six years he had performed hundreds of cell searches. *Id.* at 9. With respect to the incident in question, which occurred on March 21, 2016, Officer Wolfe stated that he and his partner, Officer Albert Wood, went to Spencer's cell and had Spencer and his

cellmate stand outside the door while they conducted the cell search. *Id.* at 16. Officer Wolfe found a wad of toilet paper in the railing of the bunk bed. *Id*. at 18. He testified:

> And as I grabbed it, [] Inmate Spencer said they are Subox[o]nes.[2] So I unwrapped the toilet paper and looked and there was a stack of them about like this. I said are these all yours and he said yea. So once I found it, I kept it in my hand. We cuffed Inmate Spencer. We called Unit Three, the Lieutenant. They c[a]me down with a camera. They escorted [Inmate Spencer] to the hole. I proceeded to take the Subox[o]ne strips down to security, get out the contraband sheet. I fill out the top, twenty-eight strips, take pictures. We tested it with a narc kit and it tested positive for heroin. And then after that, I put it in the bag, I sealed it, chain of custody, and the form was filled out and everything was referred to Captain Salvi. . . . He had [taken] a pair, a piece of ripped bed sheet and he tied it. There [are] two holes in the frame. I don't know why they are there. They just, every bed has them. So [the toilet paper wad] was tied around and it was suspended by that piece of bed sheet.
>
> Q: And if you are laying on the bottom bunk as [Inmate Spencer] would have been, how accessible was the Subox[o]ne?
>
> A: It is right above his head. It is within reach.
>
> Q: Was it in eyesight?
>
> A: Yes. Right above his head.

*Id.* at 18-20. Officer Wolfe stated that generally, a "telltale sign" that they are hiding drugs is that the inmate "always has to touch it. I don't know why, but when we watch them on camera, if it is in their pocket, they are always touching it. Or they will look at it." *Id.* at 15.

_____

[2] Officer Wolfe explained that Suboxone, which looks like a "Listerine strip" that dissolves on your tongue, is a synthetic heroin. N.T. Jury Trial, *supra* at 9.

- 3 -

Q: So based on what you are saying, you are saying the telltale [sign] is that they got to have it within their sight?

A: Yea, they got to have it on their person at all times or within their sight. Like within their cell, *it is usually within sight*. *It is never hidden to where they can't directly see it.*

*Id.* at 15-16 (emphasis added). Officer Wolfe also testified that inmates are secure in their cells from 8:30 p.m. until 6:45 or 7:00 a.m. the following day (lock-up), and that searches are not normally done during lock-up due to insufficient staffing. *Id.* at 28. He also stated that he was unaware of any searches in common areas during lock-up. *Id.*

Spencer argues that Officer Wolfe's testimony implied that an inmate never hides contraband in a place that he cannot see and, therefore, the contraband hidden in his bunk must have been his. In his offer of proof, the public defender stated that the rebuttal witness, Officer Glover, works the 6 a.m. to 2 p.m. shift, and that, contrary to Officer Wolfe's testimony, he has searched common areas, not just the cells, during lock-up time and he has found drugs in common areas in the past.

"[T]he appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut." *Ballard*, 80 A.3d at 401. The fact that Officer Glover may have found drugs in common areas in the past does not refute Officer Wolfe's testimony that, in his experience, inmates usually have to have the contraband on their person or be able to see it. We agree with the trial court that Officer Glover's testimony was immaterial to this case. This

evidence would not have rebutted Officer Wolfe's testimony. We find no abuse of discretion. ***Ballard***, ***supra***.

Next, Spencer argues the court erred in refusing his request for a missing witness instruction as to Officer Wood, who assisted Officer Wolfe in the cell search. This issue is meritless as well.

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Yale***, 150 A.3d 979, 983 (Pa. Super. 2016) (citation omitted). The missing witness adverse inference rule has been summarized as follows:

> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

***Commonwealth v. Manigault***, 462 A.2d 239, 241 (Pa. 1983) (quotations, citations and emphasis omitted). In addition, the "trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." ***Commonwealth v. Miller***, 172 A.3d 632, 645 (Pa. Super. 2017) (citations and quotation marks omitted). This Court has clarified at least six circumstances where a party is *not* entitled to the missing witness/adverse inference instruction:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Boyle*, 733 A.2d 633, 638 (Pa. Super. 1999) (citation omitted).

At trial, Spencer's counsel cross-examined Officer Wolfe at length with respect to the chain of custody. The property receipt was filled out by Officer Wood, and, as Officer Wolfe testified, "[Officer Wood] did the paperwork. Because I had the drugs. I didn't let the drugs go out of my hand." N.T. Jury Trial, *supra* at 31. Cross-examination continued as follows:

Q:   And the property form is to be filled out by the person who had the drugs in his possession. Correct?

A:   Yes, it is.

Q:   So why isn't your name on there?

A:   I did not let go of the drugs. I wouldn't let go of the drugs. I tested them.

Q:   At what point did [Officer] Wood have the drugs?

A:   He never had the drugs.

Q:   That's his name?

A:    He filled the form out then.

Q:    He filled [out] the form.  Did he put them into evidence too?

A:    I put them into evidence.

Q:    Why is that not your signature?

A:    He filled out the form.

Q:    So somebody else filled out a form attesting that you put evidence into the locker?

A:    Yes.

*Id.* at 31-32.  Spencer points to the fact that the procedure calls for the party in possession of the contraband to fill out the property receipt form.  However, Officer Wolfe admitted that it was his partner, Officer Wood, who filled out the form.  Officer Wolfe also acknowledged on cross-examination that, although the search was done pursuant to a tip by another inmate, Officer Wood had marked the "random search" box, not the "investigative search" box or the "general search" box.  *Id.* at 37.  Officer Wolfe testified that it was a mistake in the paperwork, and that in fact the search was an investigative search.  *Id.* Further, Officer Wolfe acknowledged on cross-examination what he had written in his report:  "[D]uring the search, a roll of tissue was found suspended by a string over the top bunk.  ***Spencer was asked what it was***. He said Subox[o]ne." *Id.* at 49 (emphasis added).  Officer Wolfe testified on direct examinaton, however, that Spencer provided the name of the contraband unprompted.  Again, Officer Wolfe acknowledged a mistake in the paperwork.  *Id.*

Here, the Commonwealth did not produce Officer Wood as he was in Florida on vacation at the time of trial. Thus, Officer Wood was unavailable to both parties. N.T. Jury Trial, *supra* at 109. Further, Officer Wood's name was provided to Spencer in discovery, but Spencer did not subpoena Officer Wood. *Id.* at 110. A missing witness instruction, therefore, was not required. *Boyle*, *supra*. Moreover, Officer Wolfe admitted that procedures had not been followed exactly, and he admitted to mistakes in the property receipt form and omissions in his report. Spencer has failed to establish how any one of these discrepancies was material to the issue of possession. We conclude, therefore, that Spencer has failed to show he was prejudiced by the court's refusal to give a missing witness instruction. *Miller*, *supra*. We find no abuse of discretion. *Yale*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2018