J-S37009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES HILLER :
:
Appellant : No. 2206 EDA 2021

Appeal from the Judgment of Sentence Entered September 30, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005931-2019

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY BOWES, J.: **FILED JANUARY 05, 2023**

James Hiller appeals from the judgment of sentence imposed after a jury convicted him of firearms not to be carried without a license and carrying firearms in public in Philadelphia. We affirm.

The trial court offered the following summary of the evidence offered at Appellant's trial:

> On or about June 4, 2019, at approximately 4:45 pm, Philadelphia Police officers arrived at Temple University Hospital after receiving a call that a gunshot victim was brought into the hospital by a private vehicle. Specifically, Appellant drove his friend Carlton to Temple University Hospital to be treated for a gunshot wound. Simultaneously, officers received information that a shooting occurred in the 2600 block of North 12th Street. Officers responded to the shooting but were unable to locate a crime scene.
>
> Philadelphia Police Detective Mike Rocks went to the hospital to speak with the victim in order to gather more information. Detective Rocks first spoke with Appellant in the trauma bay outside of the hospital. Appellant told officers and detectives that

they were at 2600 N. 12th Street, when his friend Carlton was shot. Carlton was shot in the abdomen. Appellant told detectives the gunman fired four shots at his friend. Appellant stated the shooter used a revolver. Detective Rocks stated from personal knowledge that when a revolver is fired, the bullets come out of the front of the firearm and the spent casings stay inside the gun's cylinder, as compared to a semiautomatic handgun, which expels the cartridge casings. This was consistent with a police radio call of an unknown individual reporting hearing four shots in the area of 12th and Huntingdon around the same time. The police, however, were unable to recover any ballistic evidence from that area.

The officers testified that Appellant was cooperative, polite, and very open. Appellant told the police he lived with his wife at 710 North 66th Street Philadelphia, PA. Detective Rocks spoke with Appellant about what happened and collected Appellant's shirt as evidence - a white Philadelphia Eagles Super Bowl t-shirt.

Approximately forty-five minutes after speaking with Appellant, Detective Rocks discovered and reviewed a surveillance video from the Catalina grocery store, located on the southwest corner of 12th and Huntingdon streets, and Frank's restaurants on the northwest corner.

In the video, Detective Rocks identified Appellant [and] also observed Appellant's vehicle, a blue Buick, which Appellant used to drive Carlton to hospital.

In the video, Appellant was observed running empty-handed towards the blue car and opening the driver's side door. The video showed Appellant with a firearm in his hand, moving it up and down with smoke coming out of the muzzle – consistent with the firing of a gun. Detective Rocks testified [that] Appellant told him that, after he ran from where Carlton got shot, Appellant got back to his car and drove down a block or two where he ultimately found Carlton suffering from a gunshot wound. He subsequently helped Carlton into the car and drove him to Temple University Hospital.

A compilation of videos, referred to as Commonwealth Exhibit C-1 and C-2, was created from the surveillance videos at the corner where the incident occurred. After reviewing the video, Detective Rocks asked officers to transport Appellant to Central

Detectives for questioning. There, Detective Rocks interviewed Appellant. He asked Appellant if, at any point after the shooting, he had a handgun and returned fire. Appellant stated he did not want to answer the question. Detective Rocks then showed Appellant a still shot of Appellant holding the firearm in the video, and Appellant stated he did not recognize the person in the still shot.

After Appellant was arrested, he made a post-***Miranda*** statement to the police, which was read into evidence at trial. Appellant stated, on the day in question, he went to a cookout with Carlton, Carlton's girlfriend, and Carlton's sister at 12th and Huntingdon Streets. They arrived at a house on 12th Street where Carlton stays sometimes. Two unidentified men walked out of the house as they arrived. Carlton started talking with the two men, and the three of them walked up the street, and turned left onto a small block. Appellant watched as an argument started between Carlton and a man with braids. Appellant subsequently heard the man with the braids accuse Carlton of bringing someone to their house who stole the man with the braids' gun. Then Appellant saw the other man take his shirt off and square up with Carlton. Carlton then took his shirt off, and they both appeared as if they were about to fight. Appellant grabbed Carlton and told him to "come on." Appellant could see that the man with the braids had a gun in his sweatpants pocket. The man with the braids told Carlton he was lucky it was light out or he would shoot him. Carlton told him "if you're going to shoot, shoot." Appellant subsequently told the girls to go to the car, and he attempted to get Carlton to leave. Carlton began to walk backwards away from the men; continuing to argue.

Then the man with the braids pulled his gun out and shot Carlton.

Appellant said everyone started to run, and then he saw Carlton fall. Carlton jumped back up, and said "Bro, I'm hit." They all started running back to the car.

There is no evidence on this record that the man shot at Appellant, or the girls. Furthermore, the record is devoid of any evidence that either Appellant or the girls were threatened by the man who shot Carlton.

The girls ultimately got into the car while Carlton kept running down 12th street. Appellant then told police he got into the car and drove down 12th Street and saw Carlton at the corner of 12th and Cumberland Streets. He said Carlton got into his car and Appellant drove him to Temple University Hospital. Appellant, in his post-***Miranda*** statement to police, did not mention shooting at the men, or that he had a firearm.

Appellant was not licensed to carry a firearm.

Trial Court Opinion, 3/23/22, at 2-6 (cleaned up).

Appellant was charged with the firearms offenses indicated *supra* as well as recklessly endangering another person ("REAP"). Appellant's defense at trial was self-defense. Upon the above evidence, the trial court charged the jury as to self-defense in connection with the REAP charge, but not as a defense to the firearms violations. The jury acquitted Appellant of REAP but found him guilty of both firearms not to be carried without a license pursuant to 18 Pa.C.S. § 6106, and carrying firearms in public in Philadelphia pursuant to 18 Pa.C.S. § 6108. Thereafter, Appellant was sentenced to three and one-half to seven years of imprisonment. He filed a timely notice of appeal, and he and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our consideration:

1. Was not [Appellant] erroneously convicted of 18 Pa.C.S. § 6106, as the evidence was insufficient to establish that he carried a firearm either in a vehicle or concealed on or about his person?

2. Where the trial court instructed the jury on self-defense regarding the charge of reckless endangerment, but refused to give that instruction as to the firearms charges, did it not usurp the role of the jury and violate [Appellant's] constitutional rights to due process and to present a defense?

- 4 -

Appellant's brief at 3.

Appellant first challenges the sufficiency of the evidence to sustain his conviction for firearms not to be carried without a license. The following principles govern our review:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa.Super. 2022) (cleaned up). Furthermore:

> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. We will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Cannavo*, 199 A.3d 1282, 1290 (Pa.Super. 2018) (cleaned up).

The criminal statute at issue herein, § 6106, provides as follows in relevant part:

> any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Appellant does not dispute that the Commonwealth's evidence established that he used a firearm for which he lacked a license.[1] His contention is that the evidence was not sufficient to allow the jury to conclude beyond a reasonable doubt that he carried it in his vehicle or concealed upon his person before he used it during the incident in question. Specifically, Appellant contests the accuracy of the trial court's representation that the video showed Appellant retrieve the firearm from his vehicle. *See* Appellant's brief at 12. Rather, Appellant asserts that it is just as plausible that the video depicted that he "had bent down to pick up the gun that his wounded friend, Carlton, had just dropped on the ground."[2] *Id*. The Commonwealth, on the

_____

[1] Hence, Appellant does not challenge the sufficiency of the evidence to sustain his conviction pursuant to 18 Pa.C.S. § 6108 for carrying a firearm in public in Philadelphia. *See* Appellant's brief at 11 n.5.

[2] Appellant further argues that the jury had reasonable doubt about whether he collected the firearm from his car based upon a question it presented to the trial court in connection with the § 6108 charge. *See* Appellant's brief at 14. Appellant bases this claim on the fact that, during deliberations, the jury asked the following question: "Does the act of picking up the gun constitute carrying per the uniform firearm act[, *i.e.*,] walking down the street and picking up the gun verses walking around with the gun on your person[?]" N.T. Trial, 7/16/21, at 81. The trial court's affirmative answer to the question was not read to the jury before they found Appellant guilty of violating § 6108 because, when the crier returned to the jury room with the court's response, the jury indicated it was no longer confused. *Id*. at 85. Consequently, we discern no foundation for Appellant's suggestion that the jury found him guilty of carrying the firearm in public in Philadelphia on the basis that he picked the gun up off the sidewalk rather than from his vehicle. In any event, it is axiomatic that a jury is permitted to reach inconsistent verdicts and such an apparent inconsistency does not form the basis to overturn a conviction as long as there is evidence to support the guilty verdict. *See*, *e.g.*, *Commonwealth v. Barnes*, 167 A.3d 110, 120 (Pa.Super. 2017) (*en banc*).

other hand, maintains that the surveillance camera footage "showed the empty-handed [Appellant] standing directly next to his car, reach into or near the driver's side window of the car and then start firing a gun." Commonwealth's brief at 6.

Our review of the evidence comports with the Commonwealth's representations. The video footage reveals the events as Appellant described them in his police statement, but for his omission of the fact that he returned fire before gathering Carlton to take him to the hospital. In particular, the prosecution's Exhibit C-2, which is footage from what is identified as "Camera 6," shows that at 4:33:15 p.m., Appellant drove through the intersection covered by the camera and parked his car along the street. A male, presumably Carlton, got out of the front passenger door and walked back in the direction from which the car had come. Two females, whom we take to be Carlton's paramour and Carlton's sister, alighted from the back seat, and along with Appellant, followed Carlton out of the camera's range. At 4:37:31 p.m., Appellant and a shirtless Carlton came running back into the camera's view. Appellant, empty-handed, proceeded directly and purposefully toward the driver's side door of his car. Carlton, running alongside Appellant, was holding his shirt in one hand and nothing visible in the other. While Appellant and Carlton appeared to connect hands or come close to doing so in the street before reaching Appellant's car, there is no indication that any item changed

hands or that Carlton dropped anything, or that an item left Carlton's possession with a trajectory towards the driver's door of Appellant's vehicle.

Carlton sprinted past Appellant's car without hesitation and ran down the sidewalk in the opposite direction from which they had come. Appellant, meanwhile, stopped next to the driver's door of his vehicle, bent over slightly, reached down, and then stood up with the firearm in his hand.[3] Appellant assumed a shooting stance and fired several shots while walking back toward the peril. Without making any movement to dispose of the weapon, Appellant returned to his car, got behind the wheel, and, after Carlton's sister and girlfriend also got back into the car, drove in the direction towards which Carlton had fled.

From this evidence, the jury was fully capable of using logic and reasonable inferences, rather than conjecture or surmise, to conclude that Appellant both drove his vehicle to the scene with a firearm concealed therein within reach of his driver's seat, and that he took the gun in the car with him

_____

[3] Appellant in his closing argument posited that Carlton dropped the gun in the street and that Appellant bent down, picked it up there before reaching the car. *See* N.T. Trial, 7/16/21, at 31. However, we do not see that in the footage. What we clearly see is that after this alleged in-stride gun scoop, Appellant kept running to the car door and bent down there before drawing the weapon and walking back towards the danger while returning fire. If Appellant had obtained the gun at the time he suggested, his subsequent trip to his car and dalliance there before he turned back to address the threat was an unnecessary waste of time inconsistent with an urgent need to defend himself. In short, the timing of Appellant's possession of the weapon is supported by neither evidence nor logic.

as he drove away. That was sufficient to sustain the Commonwealth's burden, for it was not required to preclude any possibility of Appellant's innocence. *See Cannavo*, *supra* at 1290. Accordingly, Appellant's sufficiency claim merits no relief.

In his second issue, Appellant asserts that the trial court erred in refusing to charge the jury on self-defense as to both § 6106 and § 6108. Our review of this claim is governed by the following legal principles. "Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Yale*, 150 A.3d 979, 983 (Pa.Super. 2016) (cleaned up).

It is well-settled that, "[b]efore the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Commonwealth v. Green*, 273 A.3d 1080, 1085 (Pa.Super. 2022) (cleaned up). We have detailed the showing required to entitle a defendant to a self-defense instruction as follows:

> In order . . . to be entitled to an instruction on justification as a defense to a crime charged, the actor must first offer evidence that will show:
>
> > (1) that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;
>
> > (2) that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

As with any offer of proof, it is essential that the offer meet a minimum standard as to each element of the defense so that if a jury finds it to be true, it would support the affirmative defense. . . . This threshold requirement is fashioned to conserve the resources required in conducting jury trials by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses raised by the defendant. Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense.

*Commonwealth v. Clouser*, 998 A.2d 656, 659 (Pa.Super. 2010) (cleaned up).

A defendant may meet his burden with "evidence from whatever source." *Green*, *supra* at 1085 (cleaned up). "Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination." *Id*. (cleaned up). "However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration." *Id*. (cleaned up). Those three elements are as follows: (1) the defendant believed, reasonably, that the use of deadly force was necessary to avert an imminent danger of death or serious bodily injury; (2) the defendant did not provoke the incident; and (3) the defendant did not violate a duty to retreat. *See*, *e.g.*, *Commonwealth v.*

*Patterson*, 180 A.3d 1217, 1231 (Pa.Super. 2018). "If there is any evidence from whatever source that will support these three elements then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court." *Green*, *supra* at 1085 (cleaned up).

Noting that the Commonwealth agreed that a self-defense instruction was appropriate on the REAP charge, and the trial court gave the instruction as to that charge, Appellant does not detail what evidence offered at trial was sufficient to warrant a justification instruction. *See* Appellant's brief at 16. Instead, relying on this Court's decision in *Commonwealth v. Miklos*, 159 A.3d 962, 968 (Pa.Super. 2017), he asserts that the trial court erroneously concluded that justification was not available as a defense to possessory offenses as a matter of law. *See* Appellant's brief at 19-22.

In *Miklos*, the defendant shot the victim during a drug deal gone bad. At his non-jury trial, the defendant took the stand to provide evidence to support his claim of self-defense. Specifically, he testified that, when the victim met him to purchase pills, the victim pulled a gun on the defendant and began searching the defendant's pockets. The defendant, who was prohibited from possessing a firearm based upon a prior conviction, grabbed the gun, which discharged as the two men struggled for it wounding the victim. While the men continued to struggle, the defendant picked the fallen gun up off the ground and fired another shot into the victim. The defendant then fled from

the scene with the firearm and the shell casings, which he later threw into the woods. Despite this evidence, the trial court convicted the defendant of person not to possess pursuant to 18 Pa.C.S. § 6105, concluding that, while the defendant was justified in possessing the firearm during the initial struggle and discharge, the defendant's subsequent, unjustified possession supported the conviction.

On appeal, the defendant challenged the sufficiency of the evidence to sustain the conviction, arguing that the "brief possession of the firearm simply to remove it from [the victim's] control was justified," and negated the intent-to-possess element of the crime. *Miklos*, *supra* at 967. We began by observing "that unlawful possession of a firearm is a continuing offense, and thus, [the defendant's] possession of the firearm may have been justified for part, but not all of the time [that he] exhibited control over the weapon." *Id*. at 968. Considering the evidence before the fact-finder, we agreed with the trial court that the defendant's initial possession of the firearm during the struggle with the victim was justified, but "his continued control over the weapon after the altercation was not." *Id*. at 969. Therefore, we affirmed the conviction.

Appellant maintains that, pursuant to *Miklos*, he was entitled to have the jury consider justification as a complete defense to the charges of possessing the firearm without a license and carrying a firearm in public in Philadelphia, and to determine whether Appellant maintained possession of

the weapon longer than was warranted. *See* Appellant's brief at 21. He further argues that even if a self-defense instruction was not warranted for the § 6106 charge, it was appropriate as to § 6108 because the video depicted him carrying the firearm in public only as long as necessary to defend himself. We disagree for multiple reasons.

First, as we detailed above, the evidence plainly showed that Appellant possessed the firearm in his vehicle before he encountered any imminent threat. With no evidence suggesting a justification for the pre-altercation possession, we have no hesitation in concluding that the trial court properly declined to instruct the jury as to self-defense as to the § 6106 charge.

Second, unlike the defendant in *Miklos*, Appellant did not testify or otherwise proffer sufficient evidence to show that a justification instruction was warranted. Appellant's version of events came into evidence only through his statement to the police. In his statement, Appellant omitted from the narrative any mention of his use of deadly force in response to Carlton's shooting, let alone why he reasonably believed deadly force was necessary to avoid that threat or why he could not have retreated. As the trial court stated in its opinion:

> The core reason the court found Appellant without justification was that the record failed to show any credible evidence that Appellant was being shot at or needed any self-protection. The record, specifically, including Appellant's . . . statement, includes no mention of Appellant being the target of the gunshots. Furthermore, Appellant was able to safely retreat to his vehicle for shelter after Carlton was shot. He could have simply driven away.

- 13 -

> Instead, he reached into his car, pulled out an illegal firearm and discharged it.

Trial Court Opinion, 3/23/22, at 12 (cleaned up).

Our review of the certified record confirms the trial court's finding that there was no evidence that would have permitted the jury to conclude that Appellant did not violate his duty to retreat. As our summary of the video indicates, Appellant not only elected to retrieve the firearm from the driver's seat area of his vehicle instead of getting into the car and driving away, but he purposefully walked back toward the danger rather than away from it.[4] Appellant did the exact opposite of retreating, with no evidence why he reasonably deemed that necessary. Thus, because there was insufficient evidence to support a finding that Appellant did not violate a duty to retreat, the trial court was within its right to refuse to burden the jury with the justification instruction as to both of the firearm possession charges. **See Clouser**, **supra** at 659.

_____

[4] Appellant characterizes the trial court's rejection in its Rule 1925(a) opinion of the evidentiary support for a self-defense to be "a perplexing about-face" from its indication at trial "that there was 'certainly enough evidence' to support a self-defense charge." Appellant's brief at 18 (quoting N.T. Trial. 7/15/21, at 14)). From our review of the trial evidence, particularly Appellant's choice to go back and discharge a firearm down a public residential street rather than get into his car and drive after his wounded friend, what is perplexing to us is not the trial court's subsequent rejection of the propriety of a self-defense instruction as to the firearms offenses, but its earlier ruling that the defense was available in connection with the REAP charge.

Therefore, having discerned no abuse of discretion or error of law on the part of the trial court in declining to instruct the jury on justification, we have no cause to disturb Appellant's judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>1/5/2023</u>