J-A24030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| LANCE SMITH | : | |
| Appellant | : | No. 2207 EDA 2021 |

Appeal from the PCRA Order Entered September 30, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002394-2014

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| LANCE SMITH | : | |
| Appellant | : | No. 2208 EDA 2021 |

Appeal from the PCRA Order Entered September 30, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002395-2014

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED JANUARY 19, 2023**

Lance Smith appeals from the orders dismissing his petition for relief filed pursuant the Post Conviction Relief Act ("PCRA"), ***see*** 42 Pa.C.S.A. §§ 9541-9546. Smith now argues his trial counsel was ineffective for failing to object to certain jury instructions and for failing to object to statements made by the prosecutor during closing arguments. We affirm.

In November 2013, Smith was involved in a fight that started inside a restaurant and club on South Street in Philadelphia when another patron, Willie Crenshaw, believed he observed Smith choking a woman and intervened. Crenshaw's brother, Demetry Presley, joined in the fight. The fight continued outside. Smith retrieved a .40 caliber handgun and returned to South Street, where he saw Crenshaw and Presley. Presley had been badly injured in the fight and needed his brother's assistance to walk. The brothers crossed the street to avoid Smith, who followed and began shooting toward them, even as Crenshaw and Presley tried to hide between parked vehicles. Smith ultimately shot Presley five times, including a fatal shot to the head. Smith was charged at two separate dockets with murder generally and related offenses.

In July 2016, Smith pled guilty to third-degree murder, persons not to possess firearms, and possession of an instrument of crime. Prior to sentencing, Smith was permitted to withdraw his guilty plea. The matter then proceeded to a jury trial, after which Smith was convicted of first-degree murder, firearms not to be carried without a license, recklessly endangering another person, and resisting arrest. The trial court sentenced Smith to an aggregate term of life in prison. This Court subsequently affirmed Smith's judgment of sentence. *See Commonwealth v. Smith*, 216 A.3d 442, 3041 and 3042 EDA 2017 (Pa. Super. filed Apr. 30, 2019) (unpublished memorandum).

On March 27, 2020, Smith filed the instant, timely PCRA petition raising several ineffective assistance of counsel claims. The Commonwealth filed a motion to dismiss Smith's petition. The PCRA court issued notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907, to which Smith filed an objection. On September 30, 2021, the PCRA court dismissed Smith's PCRA petition. This timely appeal followed.[1]

Our appellate review of the denial of PCRA relief "is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. Super. 2012) (citation omitted).

On appeal, Smith argues his trial counsel provided ineffective assistance. Preliminarily, we presume that counsel is effective, and the appellant bears the burden of proving otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). The appellant must demonstrate that: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." *Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citation omitted). Failure to satisfy any prong of the ineffectiveness test requires rejection of the claim.

---

[1] Smith filed timely notices of appeal at each docket number. This Court consolidated the appeals *sua sponte*.

- 3 -

*See Commonwealth v. Roane*, 142 A.3d 79, 88 (Pa. Super. 2016) (citation omitted).

Smith first claims his trial counsel was ineffective for failing to object to the trial court's allegedly erroneous self-defense and voluntary manslaughter jury instructions. *See* Appellant's Brief at 3. According to Smith, the standard jury instruction for justification does not properly explain that a defendant may successfully raise a justification defense even where he kills someone other than the individual who provoked justified deadly force. *See id.* at 4. Smith acknowledges that trial counsel requested a modification of the jury instruction to reflect the defense theory that Smith was justified in shooting at Crenshaw but shot Presley as a result of poor aim. *See id.* at 5. According to Smith, the trial court read the standard instruction despite the parties' agreement to the modified instruction, and counsel failed to object. *See id.* at 6. Smith also avers that trial counsel failed to object to an improper voluntary manslaughter instruction on the basis that justification could reduce homicide to manslaughter. *See id.* at 6-10.

Generally, "counsel is not deemed ineffective for failing to object to a jury instruction given by the court where the instruction itself is justifiable or not otherwise improper." *Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014). In order to establish prejudice from trial counsel's failure to object to an erroneous or missing jury instruction, an appellant must establish that there is a reasonable probability that the outcome of the proceeding would

have been different but for counsel's inaction. *See Commonwealth v. Spotz*, 84 A.3d 294, 320 (Pa. 2014).

During trial, the parties discussed proposed points of charge with the trial court, at which time trial counsel raised a question about a justification charge. Counsel asked the court to change the phrase "the defendant did not reasonably believe that he was in … imminent danger from [] Presley," to include Presley "or his brothers." *See* N.T., 9/8/17, at 123.[2] Counsel also explained this change would reflect the defense theory that Smith was in fear of imminent danger from Crenshaw, who was standing next to Presley. *See id.* The Commonwealth, in turn, suggested the court leave out any mention of names and instead instruct that "defendant did not reasonably believe he was in imminent danger [of] death or serious bodily injury[.]" *Id.* at 124. Trial counsel and the court agreed, and trial counsel identified two specific instances in the instruction that identified Presley. *See id.* at 123-34.

The trial court instructed the jury as agreed to by the parties, omitting Presley's name in the two sentences that trial counsel had identified. While Presley's name appears twice during the instruction, our review reveals that counsel explicitly identified only two places where Presley's name should be

_____

[2] We note that the transcripts from September 8, 2017, are not included in the certified record. *See Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*) ("[T]he ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant[.]"). However, the transcripts from that date are included in the reproduced record, and neither party contests their contents.

removed, and the trial court removed those references as requested. *See id.* at 123-24. The parties did not discuss removing Presley's name from the voluntary manslaughter instruction.

The trial court also explained that certain mitigating circumstances vitiate malice, and that without malice, the killing may be reduced to voluntary manslaughter. *See* N.T., 9/8/17, at 28. The court stated that voluntary manslaughter may be found if the perpetrator kills under an unreasonable mistaken belief that the killing was justified. *See id.* at 28-29; *see also id.* at 22 ("[A] killing is without malice if the perpetrator acts with a lawful justification or excuse or under circumstances that reduce the killing to voluntary manslaughter."), 28 ("[Y]ou can find malice and murder only if you are satisfied beyond a reasonable doubt that the defendant was not acting … under an unreasonable belief that the circumstances were such that, if they existed, would have justified the killing."). Further, the trial court aptly explained that to negate a justification defense, the Commonwealth was required to establish that either 1) Smith did not actually believe he was in danger of death or serious bodily injury which required him to employ deadly force in self-defense; or 2) Smith actually believed he was in immediate danger, but that belief was unreasonable in light of the circumstances. *See id.* at 25.

We conclude Smith's underlying claim lacks merit. The challenged jury instructions comported with the suggested standard jury instructions and

accurately stated the law. *See* Pa. SSJI (Crim) § 9.501 (Use of Force/Deadly Force in Self-Defense); Pa. SSJI (Crim) § 15.2503A (Voluntary Manslaughter—Murder in Issue). "There is error in jury instructions only when the trial court abuses its discretion and inaccurately states the law." *Commonwealth v. Kane*, 188 A.3d 1217, 1231 (Pa. Super. 2018). Because the jury instructions reflected Smith's particular requests and accurately stated the law, the underlying claim lacks arguable merit.

Moreover, in light of the evidence supporting Smith's first-degree murder conviction, we do not find a reasonable probability that use of different justification or voluntary manslaughter instruction would have resulted in a more favorable outcome for Smith. *See Spotz*, 84 A.3d at 320. In evaluating Smith's direct appeal, this Court previously concluded the evidence sufficiently established that Smith had time to cool off after the initial altercation and proceeded to deliberately shoot Presley without justification:

> [Smith] had been removed from the danger and given the opportunity to obtain aid from the police and/or medical professionals, and to be taken home by friends. Instead, [Smith] ran from the car of women who had tried to remove him from the scene; connected with a friend who provided [him] with a firearm and a change of clothes; went back towards the [club] to encounter Crenshaw and others who were attempting to get Presley to a hospital; attacked the unarmed group of men, shooting Presley in the arms, hand, and head; and immediately thereafter fled from the police.

*Smith*, 3041 and 3042 EDA 2017 (unpublished memorandum at 8) (citations to record omitted). Further, Smith pursued Crenshaw and Presley after

shooting Presley multiple times and the pair had tried to hide behind a car. *See id.* (unpublished memorandum at 9).

With more than sufficient evidence that Smith acted with malice and a specific intent to kill, the mention of Presley's name during the justification and voluntary manslaughter instructions would not reasonably have resulted in a different outcome at trial. Accordingly, Smith failed to demonstrate actual prejudice. This ineffective assistance of counsel claim does not entitle him to relief.

Next, Smith claims trial counsel was ineffective for failing to request an involuntary manslaughter jury instruction, or to the extent he did request such instruction, for failing to object to the court's failure to give the instruction. *See* Appellant's Brief at 14-15; *see also id.* at 15 ("It is not clear whether trial counsel actually requested an involuntary manslaughter instruction.").

When evaluating the propriety of an involuntary manslaughter charge, we consider "first, whether appellant made a timely request for an instruction on involuntary manslaughter, second, whether the offense was made an issue in the case, and finally, whether the evidence at trial could support a verdict of involuntary manslaughter." *Commonwealth v. McCloskey*, 656 A.2d 1369, 1372 (Pa. Super. 1995). Additionally, "[t]he issuance of lesser-included homicide offenses must be firmly grounded in logic and policy, and cannot be justified as giving a jury discretion to dispense mercy." *Commonwealth v.*

***Yale***, 150 A.3d 979, 986 (Pa. Super. 2016) (citation and internal quotation marks omitted).

On direct appeal, Smith similarly argued the trial court erred by declining to include an involuntary manslaughter jury instruction. As we noted in our prior decision, "[t]he only reference to a request by [Smith] for a jury instruction on involuntary manslaughter is the following: 'I would ask you to charge with involuntary manslaughter on both ends, both under the heat of passion, which is logical under the evidence, and under self-defense.'" ***Smith***, 3041 and 3042 EDA 2017 (unpublished memorandum at 11) (citation to transcript omitted).

Because counsel referred to heat of passion and self-defense, the trial court believed counsel intended to request a voluntary manslaughter charge. ***See*** Trial Court Opinion, 5/8/18, at 10. ***Compare*** 18 Pa.C.S.A. § 2504(a) ("A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.") ***with*** 18 Pa.C.S.A. § 2503(a) (a killing committed without lawful justification where the actor is "under a sudden and intense passion resulting from serious provocation"), (b) (setting forth the justification defense). Counsel did not later object to the absence of an involuntary manslaughter charge. ***See Smith***, 3041 and 3042 EDA 2017 (unpublished

memorandum at 12) (deeming Smith's direct appeal challenge waived because counsel did not raise a timely objection).

Further, even if counsel had intended to request an involuntary manslaughter charge and had properly objected to its absence, involuntary manslaughter was not made an issue in the case, nor did the evidence support an involuntary manslaughter verdict. An instruction for involuntary manslaughter would have been appropriate if there was evidence that Smith was reckless or grossly negligent in shooting and killing Presley. **See** 18 Pa.C.S.A. § 2504.

Here, however, Smith only vaguely argues that his actions were reckless where he attempted to defend himself against Crenshaw but mistakenly shot Presley instead. **See** Appellant's Brief at 17. Further, while the parties discussed the jury instructions, trial counsel stated as follows:

> Judge, it's the Commonwealth's theory of the case that [Smith] went back for revenge [f]or being beating [*sic*] up that evening. I think that's clearly a completely reasonable theory of what happened; that he was beaten to a point of a fractured orbit. And according to the Commonwealth, [Smith] returned with a gun to seek vengeance. I think that's a completely consistent version of the facts.

N.T., 9/8/17, at 122. When the Commonwealth suggested that Smith either intended to kill Presley or he ultimately drew his gun in self-defense, counsel replied, "This is a clear case of heat of passion." **Id.** at 122-23.

Smith's primary defense theory was that he believed he was in danger from Crenshaw and acted in self-defense, mistakenly shooting Presley instead.

- 10 -

The only recklessness or gross negligence implied in that scenario is that of Smith's marksmanship. In other words, this framing concedes that Smith fired his gun with the intent to, at the very least, hit Crenshaw. That he instead hit Presley was not relevant to his *mens rea* under criminal law. **See** 18 Pa.C.S.A. § 303(b)(1).

Alternatively, Smith argued he acted in the heat of passion, which would point to voluntary manslaughter rather than involuntary manslaughter. Smith fails to point to any evidence introduced at trial which would support a verdict of involuntary manslaughter or properly bring the issue of recklessness or gross negligence before the jury. **See Yale**, 150 A.3d at 987 (trial court did not err in denying defendant's requested involuntary manslaughter jury charge where there was no evidence that he acted recklessly or with gross negligence). Moreover, as we discussed above, Smith cannot establish actual prejudice given the abundant evidence supporting his first-degree murder conviction. Therefore, counsel was not ineffective for failing to request, or object to the absence of, an involuntary manslaughter charge.

Smith also claims his trial counsel should have objected to certain statements made by the prosecutor during closing arguments. **See** Appellant's Brief at 22. In particular, Smith challenges the Commonwealth's suggestion that he had motive to kill Presley, arguing that there was no evidence showing any interaction between the two prior to the shooting. **See id.** at 22-23. According to Smith, video footage and witness testimony established that he

did not interact with Presley during the initial fight. *See id.* at 23. Smith claims he was prejudiced by the improper argument because it provided the jury with a basis for finding malice to support a murder conviction. *See id.* at 27.

> A claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.

*Commonwealth v. Hanible*, 30 A.3d 426, 464-65 (Pa. Super. 2011) (internal citations and quotation marks omitted). We must also consider the circumstances and context in which the statement was made. *See id.* at 465. We will reverse only if "the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." *Id.* (citation and quotation marks omitted).

Here, the PCRA court considered the challenged statements within the context of the larger argument and concluded the prosecutor merely summarized the evidence and presented reasonable inferences which could be deduced therefrom. *See* PCRA Court Opinion, 12/22/21, at 12-15.[3] The

---

[3] We note that the PCRA court addressed Smith's final issue as a prosecutorial misconduct claim rather than as a challenge to counsel's representation for failing to object to the statements. Nevertheless, its reasoning speaks to the arguable merit prong of the ineffective assistance of counsel test.

court described the events of that evening as "an all-out brawl" and a "melee," and concluded there was no common-sense basis to claim that Smith only fought with Crenshaw, where Presley was also involved in the fight. *See id.*

The PCRA court's conclusion is supported by the record. Smith was involved in a large and chaotic fight in a Philadelphia club. It was not unreasonable to deduce that Smith was at one time engaged in a fight with Presley or was at least aware of Presley's participation in the fight. Moreover, the jury had the opportunity to listen to the testimony and watch the video footage that Smith references in support of his claim. The trial court also adequately instructed the jury that closing arguments should not be considered as evidence and that the jury is not bound by counsels' recollection of the evidence. *See* N.T., 9/8/17, at 150-52. We disagree with Smith's assertion that the prosecutor's comments had the unavoidable effect of biasing the jury against him, causing the jury to inappropriately weigh the evidence, or otherwise denying him the right to a fair trial. *See* ***Commonwealth v. Busanet***, 54 A.3d 35, 65 (Pa. 2012) (appellant was not entitled to relief where prosecutor's repeated implication that appellant disregarded human life "did not divert the jury's focus away from considering the relevant facts of the case and applying them to the law as instructed by the trial court or in any way deny him the right to a fair trial."). Therefore, the underlying claim lacks arguable merit, and Smith's final ineffective assistance of counsel claim fails.

Based upon the foregoing, we affirm the order dismissing Smith's PCRA petition.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *1/19/2023*